FILED

2010 Sep-01  AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KATHY ARBOLEYA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-02013-NE** |
| | ) | |
| **FIRSTSOURCE ADVANTAGE,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion to compel, which arises out of several discovery disputes.  Plaintiff, Kathy Arboleya ("Arboleya"), has filed a motion to compel the following from defendant, Firstsource Advantage, LLC ("Firstsource"):  (a) responses to interrogatories, (b) production of documents, and (c) inspection of Firstsource's premises.[1]  Further, Arboleya requests an award of costs associated with conducting the inspection.[2]

This case arises out of alleged attempts by Firstsource to collect a debt owed by Arboleya.[3]  Arboleya filed a claim against Firstsource under the Fair Debt Collection Practices Act of 1977, 15 U.S.C. § 1692 *et seq.,* in addition to state law

---

[1] Doc. no. 11, at 1.

[2] *Id.*, at 9.

[3] Doc. no. 11, ¶ 2; doc. no. 1, ¶¶ 5-24.

claims for invasion of privacy and negligent and/or wanton hiring, training, and supervision.[4]  Arboleya served discovery requests in conjunction with her complaint and, despite multiple attempts since the commencement of this action,[5] the parties have been unable to resolve their discovery disputes without court involvement. Each disputed issue is addressed under the appropriate heading below.

## I.  PLAINTIFF'S INTERROGATORIES

The court will first consider the disputes concerning specific interrogatories. Federal Rule of Civil Procedure 33(a)(2) defines the scope of interrogatories as follows:

> An interrogatory may relate to *any matter that may be inquired into under Rule 26(b)*.  An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2) (emphasis supplied).  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense* . . . [and] [r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to admissible evidence."  *Id.*

---

[4] Doc. no. 1, ¶¶ 38-61.

[5] Counsel for plaintiff and defendant have exchanged various letters and emails discussing their discovery disputes.  *See, e.g.*, doc. no. 12, Exs. C, D; doc. no. 14, Exs. B, C.

(emphasis supplied). "Relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Rowlin v. Alabama Department of Public Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001) (citations and internal quotation marks omitted).

Arboleya cites two specific interrogatory disputes.[6] In Interrogatory No. 19 she requests that Firstsource provide the factual basis for its "bona fide error" defense.[7] Firstsource responds by claiming that it "has not made a determination yet regarding the use of such a defense at the summary judgment stage or otherwise."[8] At the same time, however, Firstsource argues that requiring it to meet Arboleya's request would "provide to Plaintiff . . . a roadmap" and, thereby, "violate the work product doctrine."[9] The facts supporting the bona fide error defense, which is plainly alleged in defendant's answer,[10] are obviously relevant. Regarding the work product privilege, it is common knowledge that "the rule does not protect from disclosure the underlying facts known to the party or his counsel even if acquired in anticipation of

---

[6] There were initially three specific interrogatory disputes, but Firstsource agreed to answer Arboleya's Interrogatory No. 6, rendering that issue moot. *See* doc. no. 14, ¶¶ 25-30. Arboleya requested that "any disciplinary policy be identified." Doc. no. 11, ¶ 5; Doc. no. 1, at 28, ¶ 6. In its response, Firstsource stated as follows: "Firstsouce will identify in full its disciplinary policy, thus making moot Plaintiff's Motion to Compel a response to this Interrogatory." Doc. no. 14, ¶ 27.

[7] Doc. no. 11, ¶ 4.

[8] Doc. no. 14, ¶ 25.

[9] *Id.*, ¶ 26.

[10] Doc. no. 2, at 8.

litigation." *Bowne v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (citing *Eoppolo v. National Railroad Passenger Corp.*, 108 F.R.D. 292, 294 (E.D. Pa. 1985)).  Accordingly, Firstsource must fully respond to Interrogatory No. 19 and provide to Arboleya the factual basis for its bona fide error defense.

In Interrogatory No. 7 Arboleya requested that Firstsource identify all documents that "describe, record, or establish Defendant's methods and techniques used to collect debts for the previous three years and up through the present."[11] Arboleya asserts that this language requires the identification of collection-related emails and other memoranda that defendant has received from the original creditor for Arboleya's account, Capital One.[12]  Although the precise grounds of dispute are indecipherable, Firstsource appears to argue that (a) the information sought is outside the scope of the interrogatory posed, and (b) plaintiff has mischaracterized the deposition testimony of Capital One's corporate representative.[13]  The court is satisfied that the communications between Capital One and Firstsource are encompassed by the interrogatory posed.  It is standard, clearly-written, and of the type routinely directed to defendants in this kind of litigation.  Arboleya's "characterization" of deposition testimony, whether correct or incorrect, has no

[11] Doc. no. 11, ¶ 6.

[12] *Id.*, ¶ 7.

[13] Doc. no. 14, ¶¶ 29-30.

bearing on this issue.  Accordingly, Firstsource must fully respond to Arboleya's

Interrogatory No. 7 and identify collection-related documents sent by Capital One to

Firstsource and *vice versa*.

## II.  PLAINTIFF'S REQUESTS FOR PRODUCTION

The court now will consider disputes stemming from Arboleya's requests for

production.   Arboleya seeks, and Firstsource disputes, the production of the

following:  Firstsource's employee manual;[14] documents evidencing other claims

against Firstsource;[15] and the personnel file of India Moss, the collector who allegedly

violated the Fair Debt Collection Practices Act of 1977 and, thereby, caused harm to

Arboleya.[16]   Federal Rule of Civil Procedure 34(a)(1) governs the production of

documents.  It states, "A party may serve on any other party a request within the

scope of Rule 26(b) . . . to produce . . . any designated documents . . . ." Fed. R. Civ.

P. 34(a)(1).  The party making the request for production "must describe with

reasonable particularity each item or category of items to be inspected." Fed. R. Civ.

P. 34(b)(1)(A).

Arboleya moves to compel Firstsource to produce the employee manual in

---

[14] Doc. no. 11, ¶ 1; doc. no. 14, ¶¶ 14-18.

[15] Doc. no. 11, ¶ 2; doc. no. 14, ¶¶ 19-23.

[16] Doc. no. 11, ¶ 3; doc. no. 14, ¶ 24.

place at the time Arboleya's alleged injury occurred.[17]   Firstsource argues that the following language is insufficient to request production of its employee manual: "Any and all training, personnel, or other instruction manuals used by any and all collection personnel who are employed by or who are agents of Defendants or supervised by Defendants for the three (3) years prior and up to the present."[18]   Additionally, Firstsource contends that it need not produce the manual because it has "produced hundreds of pages" of other material.[19]  An employee manual clearly fits within the category of items described in the request for production, and Firstsouce, having already produced a voluminous amount of material, should have little difficulty surrendering one more document.   Accordingly, Firstsource must comply with Arboleya's Request for Production No. 3 and produce the employee manual that was in place on the date that Arboleya's alleged injury arose.

The next item of dispute concerns documents evidencing other claims or lawsuits against Firstsource.  In sum and substance, Arboleya seeks to discover any other lawsuits filed against Firstsource during the previous three years.[20]  Firstsource,

---

[17] Doc. no. 11, ¶ 1.

[18] Doc. no. 14, ¶¶ 14-18.

[19] *Id.*, ¶ 15.

[20] Plaintiff requests:

Any and all documents related to or evidencing any and all lawsuits, legal claims, equitable claims, regulatory complaints, regulatory reports, arbitrations,

to the extent that an argument can be extracted, contends that Arboleya's request is too broad.[21]   A request for documents evidencing *any* lawsuit *ever* filed against Firstsource may be too broad.  The court is satisfied, however, that the three-year restriction is reasonable under the circumstances.  Accordingly, Firstsource must fully comply with Request for Production No. 5 and produce documents responsive to that request.

Firstsource also disputes Arboleya's request for the personnel file of India Moss, the collector whose alleged misconduct forms the basis of this action.[22] Firstsource, concerned with the "personal, private and confidential" nature of the file agreed to submit it for *in camera* review.[23]  No review is necessary.  On June 22, 2010, the parties jointly entered into a protective order, which will preserve the privacy of Ms. Moss's personnel file.[24]  Accordingly, Firstsource must comply with

---

mediations, in-court settlements, out-of-court settlements, or any other proceeding, formal or informal, to which any Defendant has been named as a witness or a party, that have existed or been brought with respect to or involving any Defendant, and which involved as all or part of their subject matter debt collection activities, for a period of three (3) years before the date of this request to the present.

Doc. no. 1, at 32.

[21] *See* doc. no. 14, ¶¶ 19-23 ("Firstsource believes the manner in which it responded — by identifying the only other instance in which Firstsource was sued in Alabama in the prior three years — is a reasonable response to such an overbroad request.").

[22] Doc. no. 11, ¶ 3.

[23] Doc. no. 14, ¶ 24.

[24] *See* doc. no. 9.

Arboleya's Request for Production No. 6 and forthwith produce the personnel file of

India Moss.

### III.  PLAINTIFF'S REQUEST FOR RULE 34 INSPECTION

Last is the matter of the Rule 34 inspection dispute.  Arboleya seeks to inspect

"the physical layout of Defendant [*sic*] various work areas, the location and proximity

of management offices to collection agents, the specific telephone systems in use, the

computer systems used to record collection information and the time clock for records

indicating which employees were working during the phone calls in question."

Firstsource argues that such an inspection seeks irrelevant information and would

unduly burden its business operations.[25]   Moreover, Firstsource cites concerns

regarding its proprietary information and the privacy of collectors and consumers.[26]

It is evident, upon considering the merits of the inspection conflict, that the

parties have suffered a communication breakdown.  Firstsource's primary concern

appears to be the "disruption to Firstsource's business," which it claims would be

"severe."[27]   Yet Arboleya "proposes that the inspection take place in the evening

hours after collection activities have stopped . . . or in the morning before collection

hours start in an effort to accommodate the business needs of Defendant and conduct

---

[25] Doc. no. 14, ¶¶ 32, 34-35.

[26] *Id.*

[27] *Id.*, ¶ 32.

[the] inspection in the least intrusive manner possible."[28]   Thus, there is no real

disagreement here.   Perhaps if the parties engaged in meaningful conversation

regarding the inspection, this court's review of the matter would be unnecessary.

Because review has become necessary, however, the court will consider the merits of

Firstsource's other points of contention.

Inspections are governed by Federal Rule of Civil Procedure 34(a).  That rule

states, in pertinent part:

> A party may serve on any other party a request within the scope
> of Rule 26(b) . . . to permit entry onto designated land or other property
> possessed or controlled by the responding party, so that the requesting
> party may inspect, measure, survey, photograph, test, or sample the
> property or any designated object or operation on it.

Fed. R. Civ. P. 34(a).  The opposing party may object to a request for inspection "on

any ground that would support an application for a protective order under Rule 26(c)

. . . . [including] annoyance, embarrassment, oppression, or undue burden or

expense."  *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus.*, 171 F.R.D. 246,

248 (D. Minn. 1997).  In determining whether an inspection is appropriate, the court

must "balance the degree to which the proposed inspection will aid in the search for

truth against the burdens and dangers created by the inspection."  *McKesson Corp.*

*v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D.D.C. 1999).  "Whether or not to

---

[28] Doc. no. 11, at 13.

permit an inspection pursuant to Rule 34 is within a court's discretion." *Welzel v. Bernstein*, 233 F.R.D. 185, 186 (D.D.C. 2005) (citing *Belcher v. Bassett Furniture Indus.*, 588 F.2d 904, 907 (4th Cir. 1978)).

Firstsource cites *Vennet v. Am. Intercontinental Univ. Online*, No. 05-C-4889, 2007 U.S. Dist. LEXIS 92891, at *1 (N.D. Ill. Dec. 13, 2007), in support of its position that an inspection should not be allowed.[29] In that case, approximately one hundred and fifty plaintiffs were moving through the discovery process, as the district court put it, at a "plodding pace." *Id.* at *3, *6. Many of the plaintiffs demonstrated a "lack of interest in pursuing their claims," for which they were ultimately dismissed. *Id.* at *22. The court denied the plaintiffs' Rule 34 motion to compel inspection on the grounds that the plaintiffs' testimony regarding the arrangement of the office would be sufficient. *Id.* at *10-11. The differences between that case and the present matter are obvious. A single plaintiff's testimony may appear less credible to a jury than the repeated testimony of dozens of plaintiffs. While not swift by any means, the pace of this case is not so "plodding" as to justify denying the plaintiff discovery in the interest of time.[30] Unlike the plaintiffs in *Vennet*, Arboleya has actively pursued her claim. *See id.* at *19-22 (discussing the plaintiffs who were "not

[29] Doc. no. 14, at 12.

[30] Plaintiff served her complaint and discovery upon Firstsouce on September 8, 2009. Doc. no. 1, at 1. Firstsouce removed to this court on October 8, 2009. Doc. no. 1, at 6.

interested enough in pursuing their claims").  For these reasons, the court finds

Firstsource's appeal to the *Vennett* case unpersuasive.

In her motion to compel, Arboleya makes out an adequate showing of

relevancy,[31] especially given that "relevancy is 'construed broadly to encompass any

matter that bears on, or that reasonably could lead to other matters that could bear on

any issue that is or may be in the case.'"  *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682,

685 (M.D. Ala. 1998) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

351 (1978)).  The question of whether supervisors are within hearing range of

collectors and the existence of so-called "desk phones"[32] relate directly to intent and

degree of culpability.  Moreover, an in-person inspection of the "specific telephone

. . . [and] computer systems used to record collection information" reasonably could

lead to material that bears upon any one of Arboleya's claims.[33]  Thus, Arboleya's

request for an inspection will not fail for lack of relevance to the claims alleged.

An inspection should have no impact on the privacy interests asserted by

---

[31] Doc. no. 11, at 11-13.

[32] According to the plaintiff, "desk phones" operate outside the central computer system and are, therefore, not recorded.  Doc. no. 11, at 12.  These phones are allegedly used to "harass and abuse consumer debtors in a fashion which is not readily detected given the fact that no computer record is maintained for outgoing calls from these telephones." *Id.* at 12.

[33] Doc. no. 11, at 11.

Firstsouce.[34]  As discussed *supra*, the parties have jointly entered into a stipulated

protective order.[35]  Thus, while privacy concerns are always warranted, the parties are

under a heightened obligation to preserve the confidential nature of information

gathered during discovery.  The court is, therefore, confident that going forward with

the inspection does not risk public disclosure of private information.

In light of the foregoing, the court can find no valid reason to deny Arboleya's

request for a Rule 34 inspection.  As for costs, the court is unpersuaded by Arboleya's

contention that "Defendant should be required to compensate Plaintiff's counsel for

the additional time to fly back to Buffalo, New York[,] and for costs associated with

the same, when [the] inspection could easily have been performed while counsel were

already in New York."[36]  Firstsource's actions may be "curious,"[37] but this court will

not reward the assertion of wholly unsupported allegations.

---

[34] *See* doc. no. 14, at 11-14 (citing concerns regarding collector and consumer privacy, as well as concerns related to the disclosure of proprietary information).

[35] *See* doc. no. 9.

[36] Doc. no. 11, at 9.

[37] Plaintiff's counsel did not receive Firstsource's objection to Arboleya's Rule 34 inspection until after counsel left for New York to take depositions.  Doc. no. 11, ¶ 12.  At that point, Firstsource allegedly served "300 pages of documents which needed to be reviewed prior to the depositions," and this supposedly "deprived counsel of the ability to raise this issue before the court while still at his office and able to respond."  *Id*.  According to plaintiff's counsel, it was customary for Firstsouce to serve its objections upon both of plaintiff's attorneys.  *Id.*  However, Firstsource allegedly only served the attorney who had already left the state, which "guarantee[d] that plaintiff's counsel would not see [the Rule 34 objection] until after he had already arrived in New York for depositions."  *Id.*

## IV. CONCLUSION AND ORDERS

In accordance with the foregoing, plaintiff's motion to compel is GRANTED in part and DENIED in part. Defendant is ORDERED to fully, completely, and truthfully respond to the interrogatories and requests for production made the subject of plaintiff's motion to compel, *without objections*, on or before September 14, 2010. Defendant is further ORDERED to permit plaintiff to inspect its premises. The parties are directed to work together in good faith to negotiate a time for the inspection of defendant's premises. To the extent that plaintiff seeks an award of costs associated with conducting the inspection, that request is DENIED. *Defendant will be subject to the imposition of sanctions, including a monetary fine imposed upon defendant or its attorney, or a finding of contempt of court, or the entry of judgment on the issue of liability, if it fails to fully comply with this order.*

DONE this 1st day of September, 2010.

_____

United States District Judge

13